GIDEON KING, Appellant,

*against*

MOSES CATLIN, Appellee.

EJECTMENT to recover possession of south-westwardly room, and chamber over it, half of the hall and stairs, in a house in *Burlington*, erected on Lot No. 21.

Plea, not guilty.

In this cause the Petit Jury returned a special verdict, *January* term, 1802.

That the fee of Lot No. 21. was on the 29th of *April*, 1795, and for a long time before had been in *Ira Allen*. That whilst the fee was in *Allen*, he contracted with one *Joel Woodworth*, who was to erect a dwelling-house on the land; and that within six months after the house should be completed, *Allen* was to have his election either to pay *Woodworth* for the house, or to convey the land to him for a price stipulated. That *Woodworth* erected the house which contained the premises demanded in the declaration. That *Allen* never made his election, but *Woodworth* continued in possession until the 22d of *November*, 1797, when *King*, the plaintiff, attached the house as the property of *Woodworth*. That at the *February* term of *Chittenden* County Court, he recovered judgment, purchased out his writ of execution on the 4th of *March*, 1799, and on the 4th day of *April* following levied it on the premises; which levy, with the

*When he who has the fee of land allows another to erect buildings upon it, under a contract, that when the buildings are completed, he will either pay for them, or convey the land at his election, ejectment will lie upon* ouster *of the architee before such election is made. And if a creditor of him who owns the fee levies an execution on the land, and does not include the buildings in the appraisement, ejectment will lie by the creditor of the architee, who has levied an execution on any section of the buildings.*

King
v.
Catlin.

writ of execution, &c. were duly recorded in the county and town clerks' offices, according to law.

That on the 29th of *April*, 1795, *Moses* and *Lucinda Catlin* attached a number of rights of land in *Burlington*, including Lot No. 21. as the property of *Ira Allen*, upon a writ returnable to the Circuit Court of the *United States*, holden within and for the district of *Vermont*. They recovered judgment against *Allen*, October term, 1798. Execution issued 9th of *October*, 1798, and on the 29th of *November* following, was levied on the lands attached, and regular records made according to law.

That on the officer's return of the last mentioned attachment, reservation is made of the dwelling-house aforesaid, described therein as the property of *Joel Woodworth;* and on the levy of the last mentioned writ of execution, the said dwelling-house was not appraised to the defendant *Catlin* as the property of *Ira Allen.*

But whether, upon the whole matter aforesaid, in form aforesaid found, the said *Gideon King* ought by law to recover possession of the premises in the declaration demanded, the Jurors are altogether ignorant, and therefore pray the advice of the Court here.

And if upon the whole matter, by the said Jurors in form aforesaid found, it shall seem to the Court here, that the said *Gideon King* ought by law to recover possession of the premises demanded in the declaration, then the said Jurors upon their oath do say, that the said *Moses Catlin* is guilty in manner and form as the plaintiff in his declaration hath alleged, and do find for the plaintiff to recover posses-

sion of the demanded premises, with one cent damages, and his costs.

And if upon the whole matter aforesaid, by the Jury aforesaid found, it shall seem to the Court here, that the said *Gideon King* ought not by law to recover the said demanded premises, then the said Jurors upon their oath aforesaid do say, that the said *Moses Catlin* is not guilty in manner and form as the plaintiff in his declaration hath alleged, and do find for him to recover his costs.

At this term, the special verdict was argued and decided.

*Amos Marsh*, for the plaintiff. We shall consider,

First. For what ejectment will lie.

Secondly. By whom it may be maintained.

Thirdly. What kind of contract will sustain this action.

Fourthly. We shall shew, that by common law any contract, accompanied by livery and seisin, will support ejectment.

Fifthly. That there are contracts peculiar to this country, not known in *England*, which upon common law principles will maintain ejectment, and the contract between *Allen* and *Woodworth*, in whose shoes we stand in consequence of the levy of our execution, would have enabled *Woodworth*, and consequently will enable us to maintain this action.

Though the law writers are copious upon the subject of where ejectment will lie, the whole doctrine may be summed up in this position : that ejectment

King
v.
Catlin.

will lie wherever a person has been unlawfully dis-seised of a corporeal hereditament. The complaint in the writ is, that he has been wrongfully ousted of his possession, and wherever this is the case he shall recover in this action.

The only reason assigned in the books why this action will not lie for an incorporeal hereditament is, that the sheriff cannot deliver possession under the writ of *habere facias possessionem;* therefore, where-ver a person has been wrongfully ousted of any pos-session of which the sheriff may deliver him posses-sion, the action of ejectment will well lie.

Secondly. It will always lie in favour of him who has the right of entry, whether in fee, for life, for years, or for the shortest term.

For it will lie by the tenant against his landlord if his term is unexpired. It will lie for common ap-pendant or appurtenant. It lies, say the books, for a boilery of salt, that is, where a man hath no inherit-ance in the soil, in which there is a well of salt water, but only a lease or grant of so many buckets of water. *Cro. Jac.* 150. It lies *pro prima tonsura,* that is, if a man hath the grant of the first grass that grows on the land every year, he may recover it in ejectment of him who holds it from him. *Cro. Car.* 262. *Ward* v. *Petifer.*

It lies even *pro pastura centum ovium,* for so much land as will feed one hundred sheep; and though this had been doubted, yet we find it confirmed in *Rex* v. *Pendlerenthide,* 3 *Term Rep.* p. 772. and *Bunt* v. *Moore,* 5 *Term Rep.* 329.

In all these cases there is a right of entry in the plaintiff, and the action well lies.

Further. An ejectment need not be for an *entire thing*, as it will lie for the third part of a house. *Sullivan* v. *Seagrove*, *Strange*, 695.

As the right of entry is the key-stone to the action of ejectment, it will be well to inquire, whether the plaintiff had this right of entry in the premiscs demanded. He may have acquired this by contract, or by mere operation of law. The plaintiff acquired this right by the levy of an execution issued upon a legal judgment against *Woodworth*. By this levy he acquired all the right which *Woodworth* had at the time of the attachment on the mesne process. What right had *Woodworth* at such time? He had contracted with *Allen*, in whom the fee of the land was, to erect the dwelling-house which contained the demanded premises, and was either to have payment for the building, or the chance of purchasing the soil upon which it was erected.

The question is, did this contract give *Woodworth* a right of entry?

We shall shew from the books,

Thirdly. What contracts will support this action, and the leading principle which governed the Courts in admitting such contracts.

In *Doe, ex dem. Winkley*, v. *Pie*, Principal of *Barnard's* Inn, ejectment lay for a cellar held under a parol contract. *Espinasse's Reports of Cases at Nisi Prius*, p. 364, 365, 366.

To shew that the Courts in *England* will give a very liberal construction to contracts, and allow them to be the grounds of ejectment, we shall read the case of the wine-cellar, *Morgan's Essays*, vol. 2. p. 340.

King
v.
Catlin.

*Day's* edit. p. 363, 364.

King
v.
Catlin.

The case of Lord *Abington*, same authority, p. 345. 343. shews, that where the intent of the parties is, to *make a lease*, it shall be so considered, though unaccompanied with those formalities which a more rigid construction of the law would render necessary. Though the case of *Right, ex dem. Green*, v. *Proctor*, was decided against the plaintiff, yet all the Judges considered it to be law, that a license to inhabit amounted to a lease. *Burr. Rep.* vol. 4. p. 2208. *Baxter, ex dem. Abrahall*, v. *Brown, Black. Rep.* vol. 2. p. 973, 974. A promise to give a lease, accompanied with possession, was ruled to amount to a lease.

In *Bacon's Abridgment*, vol. 4. p. 160. *Gwil.* edit. we have the doctrine, that it may be laid down as a general rule, that whatever words are sufficient to explain the intent of the parties, that the one shall divest himself of the possession, and the other came into it for such a determinate time, such words, whether they run in the form of a license, covenant, or agreement, are of themselves sufficient, and will in construction of law amount to a lease for years, as effectually as if the most proper and pertinent words had been made use of for that purpose.

So, if one (p. 161.) only license another to enjoy such a house or land till such a time, this amounts to a present and certain lease, and may be pleaded as such, though it may be also pleaded as a license; and if it be pleaded as a lease for years, and traversed, the lessee may give the license in evidence to prove it.

In p. 163. of the same author, one said to another, " You shall have a lease of my lands in *D.* for twenty-

one years, paying therefor 10*l.* per annum. Make a lease in writing, and I will seal it." This was agreed by all the Justices to be a good parol lease for twenty-one years, though no writing was made of it; (being before the statute of frauds;) for the intent of the parties was sufficiently expressed, and the making of it in writing was but for further assurance, and left to the lessee if he thought it necessary.

Mr. *Marsh* cited also, *Runnington on Ejectment,* p. 9, 10. 24. 33, 54, 35 and 36.

These authorities, and many others which may be produced, go to shew, that the law will in trials of ejectment favour contracts made by parties, even against third persons, and that

Fourthly. The leading principle is, that where livery and seisin is made, that is, where possession is given by him who has the right of entry, the intent of the parties in any contract shall be carried into effect, and ejectment will lie as a remedy to the injured.

It is true we cannot produce a case exactly in point, but it is obvious,

Fifthly. That there are many contracts respecting lands and buildings, which grow out of the state of society in this country, which are unknown in *England*, but which, in furtherance of justice, must, if they have not already, be supported by the decisions of this Court. A man executes a bond conditioned to convey a lot of land in a wilderness state to another upon the payment of a certain sum by instalments. The obligee goes immediately into possession. At great labour and expense he clears the land and erects buildings upon it, and his expenditures,

before the last instalment becomes due, surpass the price stipulated for the land. Will not this bond be considered as a lease? Will it not enure against a third person, to whom the obligor might pass the land by deed? or, if set off by execution, could the creditor take more interest in the land and buildings than the debtor possessed? In such cases, must the obligee be obliged to look solely to his bond? and if the obligor becomes bankrupt, lose his labour and expenditures in the erection of buildings? Or in ejectment will not this Court decide, that the obligee has an interest in the land and buildings in which the law will protect him; that as the covenant was accompanied with actual possession, which amounts to livery of seisin, a third person, who might take a deed from the obligor, or who might have the land set off to him on execution, should not hold against him; the grantee or the judgment creditor acquiring by the deed or the levy no more interest in the land and buildings than the original holder had.

The case in the special verdict is one very common, if not peculiar to this country, and calls loudly for judicial interference; and we consider it fairly embraced by the principles and practice which sustain ejectment at common law.

In days of ignorance, the old maxim of *cujus est solum ejus est usque ad cœlum* prevailed; but it has been almost entirely done away in the more modern and more enlightened æra of *English* jurisprudence. The common principles of justice always required, if the owner of land gave another a license to erect a building upon it, subject to a future election by the owner whether to pay for the buildings or vend the land, that the

interest in the buildings, and such possession of the land as is necessary to the enjoyment of it, should be secured to the architect until the fulfilment of the contract, and that such interest of the architect in the buildings should not be defeated by the conveyance of the land to a third person, or by the interference of the creditors to the land owner.

We therefore consider, that by the common law the contract relied upon is such as gave to *Wood-worth*, in whose shoes we stand, a right of entry into the premises demanded; that the possession of *Wood-worth* was such, that he might have possession delivered to us by the sheriff under the writ of *habere facias possessionem;* that he could, and we can on *ouster* maintain ejectment upon it; that by the principles of the common law, the contract between *Woodworth* and *Allen* being accompanied with livery of seisin or possession, is a contract upon which ejectment can be maintained against a third person; that the Court will, in conformity with the *English* decisions, carry the intent of the parties into effect, and decide that the law so is that the verdict shall be recorded in favour of the plaintiff.

*Daniel Chipman, contra.* The true question is, has the contract between *Allen* and *Woodworth* so vested the property of the dwelling-house in *Wood-worth*, that he could have maintained ejectment against the judgment creditors of *Allen*, when set off to them by execution, or rather, whether the creditors of *Woodworth* can maintain it against the creditors of *Allen*.

We consider it of small import which way this question would be decided on common law principles; but we will so far notice the cases cited as to observe that they are not in point.

The case quoted in *Morgan's Essays* does not touch the present question. The point in contest there was simply who owned the wine-cellar.

But allowing Mr. *Marsh* the full force of the authorities, they amount to no more than that certain contracts shall hold in ejectment *against the contractor*, but in no case against a third person. In the present case, *Woodworth* might possibly have maintained ejectment against *Allen*, if he had been ousted before the attachments; at least he might have had relief in Chancery to compel a specific performance of the contract; but their private agreement shall not even by the common law affect their creditors. It is observable, that in the case of Lord *Abington*, quoted in *Morgan's Essays*, the Judges doubted whether the contract there in question could affect a third person.

But we consider the common law principles, be they as they may, controlled by our own statute.

By our statutes, livery of seisin is done away. Whether the land passes by deed, or is set off on execution, the perfecting the deed or the levy passes the land without further ceremony, and with the land passes all its appurtenances.

*Vermont* Stat. vol. 1. p. 189. Also *vide Haswell's* edit. P 32. Section 5. of the act regulating the conveyance of real estates, and for the prevention of frauds therein, enacts, " that all deeds or other conveyances of lands, tenements or hereditaments, lying in this State, signed and sealed by the party granting the same, having

good and lawful authority thereunto, and signed by two or more witnesses, and acknowledged by such grantor or grantors before a Justice of the Peace, and recorded at length in the clerk's office of the town in which such lands, tenements and hereditaments lie, shall be valid to pass the same without any other *act or ceremony whatever.*"

Here the whole doctrine of livery of seisin is done away. The land passes by the deed, and immediately upon its execution possession attaches to the grantee as against the grantor and his heirs, and upon the record of it, against all others claiming under him or them.

Perhaps it may be said, that in decisions under this statute, if a second purchaser knew of a former deed, though not recorded, he shall not hold against the first grantee, though his deed be recorded first; and it may be insisted, that *Catlin*, the defendant, knew of the contract between *Allen* and *Woodworth*. But we consider that there is a wide difference between a creditor and a purchaser. The purchaser can have no moral inducements to interfere with and defeat a prior contract; but a creditor is at all times countenanced in his vigilance to secure an honest debt. If I know that my neighbour has taken a deed of land, I ought not to defeat his title by a subsequent purchase, and the procuring my deed to be first recorded. But if we are both creditors, and I know that he has taken out a writ to attach the land of our debtor, I may lawfully and honestly hasten to secure my own debt by a prior attachment, and the law will favour the most vigilant.

King
v.
Catlin.

*Vermont* Stat.
vol. 1. p. 323.

Section 3. of the act directing the levying and serving executions, expressly vests the title of the land in the creditor. " All executions extended and levied upon any houses, lands or tenements as aforesaid, with the return of the officer thereon, being recorded in the records of lands of the town in which such houses, lands or tenements are situated, or in the office wherein deeds respecting the same are required by law to be recorded, and also returned into the office of the Clerk of the Court or Justice of the Peace from which such execution issued, and there recorded, shall, as against such debtor, his heirs and assigns, make a good title to the party for whom such estate was taken, his heirs and assigns for ever."

An attempt is made to scout the old maxim of *cujus est solum*, &c. but if this maxim is to be abandoned, all the respect shewn by the common law and by various statutes, to real in preference to personal estate, will be done away. While the soil remains sacredly secured to him who holds the fee by the solemnities requisite in passing the same, it may be covered with buildings with various owners, who may claim the same, if the doctrine contended for be correct, by various unrecorded and even parol tenures. The whole object of our statute of frauds is to guard the rights of *third persons*, and to protect them from imposition; and it is well worthy of consideration whether this object can be secured if this venerable maxim of the common law be abandoned. A purchaser might then inspect the record, find the fee of a lot of land in the grantor by a succession of well authenticated deeds from the sovereign, and when he had parted with his purchase-money, and

his grantor had become bankrupt, so that he could not avail himself of the covenants in the deed warranting the land to be free of all incumbrances, might discover that the buildings, which he considered as the most valuable part of the purchase, were owned by another, and be exposed to be ejected from his own fee by the possession of the buildings, which is given to the plaintiff in ejectment.

But it seems the plaintiff inclines to consider the contract between *Allen* and *Woodworth* as a lease. But a lease not recorded would expose a third person to the same imposition as a parol contract. I may convey the fee, and my grantee be afterwards surprised by a lease which I had executed for 999 years. This would completely defeat the statute of frauds, but it would be more incongruous to admit of such a lease as operating upon the buildings whilst my grantee had the fee of the land.

On the whole we contend, that though the contract between *Allen* and *Woodworth,* as relative to each other, might have been sanctioned in ejectment, yet it can never affect a *bona fide* creditor to *Allen;* and by the levy of our execution we hold the fee of Lot No. 21. and have a right to the possession of it, *with its appurtenances.*

*W. C. Harrington,* for the plaintiff. It seems to be granted, that by common law ejectment would have lain in favour of *Woodworth* against *Allen,* if the former had been ousted by the latter; but it is contended, that the plaintiff cannot as a third person maintain it. This will naturally lead to the inquiry into what rights we acquired by the levy of our exe-

cution. Our levy was on the 10th of *April,* 1799, and was made under the statute of *March* 7th, 1797, entitled, an act directing the levying and serving of executions. This statute is familiar, and without investigating it particularly we confidently assert, that in all cases where an execution is levied on *houses* or lands, all the interest which the debtor held in them at the date of the levy passes to the creditor. All the rights, and no more, which the debtor held at such time, are vested by the levy in the creditor. What interest, what rights had *Woodworth* in the premises demanded? It appears, that the fee of the land was in *Allen.* He contracted with *Woodworth,* that if he would erect a house on the land, when it was finished he would pay for the house or sell the land to him. The possession of the land was therefore delivered to *Woodworth,* who had a qualified interest both in the house and land, and had a legal as well as equitable right to retain possession both of the land and building until the contract had been fulfilled by the election of *Allen* to pay for the house, or vend and convey the land. Before this election was made, the creditors of *Woodworth* and *Allen* both attached. We attached the house as the property of *Woodworth,* and acquired by the levy of our execution all the interest, all the rights, both in the house and land, which *Woodworth* had possessed.

The defendant, in the right of his wife, attached the lands as the estate of *Allen,* and acquired, by the levy of his execution, all the interest, all the rights, which *Allen* had at the date of the levy. Sensible that the property of the dwelling-house was never in *Allen,* the defendant, as appears by the officer's re-

turn of the writ, excepted it in his attachment, describing *it as the property of Woodworth*, neither was it appraised to him in the levy of his execution.

With the knowledge of all these facts, the plaintiff now attempts to hold property for which he never paid, and to defeat us of an honest debt in defiance of the common principles of justice. But it seems, blinded by his interest, he has lapsed into a vulgar error, and imagined that the law will give him what common justice would deny him.

He is sensible that he ought not in equity to hold property for which he never paid a cent. His conscience informs him, that it is unjust to defraud the plaintiff. He acknowledges, that if the plaintiff had purchased by deed of *Allen,* and he had taken a subsequent deed, knowing of the former deed, though he should have recorded his deed first, it would not have held against the plaintiff. But he says, creditors do not stand on the same ground as purchasers; and yet the statute last read, by making no such distinction, puts them precisely on the same ground.

As a salvo to his conscience, he principally relies on an almost obsolete maxim of the law, which undoubtedly, in the first rude essays of *English* jurisprudence, when the rights of property were by no means distinctly understood or pointed out, operated as a beneficial general rule; and it may be considered as a general rule in even the more enlightened æra of the municipal law; but this maxim, when carried rigidly into operation, bade such bold defiance to the common notions of right and wrong, that perhaps no general rule has more exceptions, than that he who owns the ground owns every thing upon it. Hence

47

King
v.
Catlin.

we find in the books numerous cases wherein the right of the owner, or he who is interested in buildings or property placed on or growing out of another man's land, are sanctioned in the Courts. Hence the doctrine of emblements, &c. And the nice distinction between that which is nailed and that which is screwed to a building by a tenant, is but a vulgar and natural effort to avoid this unjust maxim.

On the whole we contend, that *Allen* made a legal contract with *Woodworth;* that it was accompanied with livery of seisin; that *Woodworth* had the right of entry, and would have continued to hold it until the contract between him and *Allen* was fulfilled; that in case of *ouster* by *Allen, Woodworth* might have maintained ejectment, and the dwelling-house would have been a proper subject for the writ of *habere facias possessionem.*

That by our statute the plaintiff, by the levy of his execution, was invested with all the interest and rights of *Woodworth* in the premises demanded.

That the defendant, by the levy of his execution, was put into the shoes of *Allen ;* that he could not by the levy take more interest in the land than *Allen* the debtor had : that *Allen's* interest in the land was a qualified interest subject to the contract; the fee of the land may be said to have been in abeyance until the fulfilment of the contract.

Therefore if *Woodworth* could have maintained ejectment upon *ouster* by *Allen*, we can maintain it against his judgment creditor, the defendant.

That in an equitable view of the subject, (for in cases which may be any wise doubtful the courts of law will always be moved by considerations of equity,)

as the defendant never attached or comprised the value of the dwelling-house in the appraisement which was made on the levy of this execution, he ought not to hold that for which he has never paid. That as our demand against *Woodworth* was *bona fide*, we ought not to be defeated of it in a Court of Justice, contrary to the common principles of justice.

King
v.
Catlin.

The Court directed judgment to be entered for the plaintiff.

*Amos Marsh* and *William C. Harrington*, for the plaintiff.

*Daniel Chipman* and *Elnathan Keyes*, for the defendant.